## No. 13,983.

ANTON FREY vs. FITZPATRICK-CROMWELL COMPANY, LIMITED.

### SYLLABUS.

1. Where defendant in his answer admits part of the amount claimed by plaintiff is due, the latter may take judgment for the amount so admitted and prosecute his suit for the remainder.

2. But where defendant, in the same answer, alleges that a legal tender of the admitted amount had been made to plaintiff on a certain day, which had been then refused, it is error to include in the judgment, so taken for the amount admitted, interest *until paid.*

3. If a legal tender had been made of the true amount due as alleged, defendant owed no interest thereafter.

4. The error of taking the judgment against the *Andrew* Fitzpatrick-Cromwell Company, Limited, instead of the "Fitzpatrick-Cromwell Company, Limited,' the true name of defendant, is held not to vitiate the judgment, especially so since that was the name given the corporation by its counsel in the back-ing or endorsement placed on their answer.

A PPEAL from the Civil District Court, Parish of Orleans— *Ellis, J.*

-------

*Charles F. Claiborne,* for Plaintiff, Appellee.

-------

*McCloskey & Benedict,* for Defendant, Appellant.

-------

The opinion of the court was delivered by

BLANCHARD, J. Plaintiff sold defendant a lot of hides. Dispute arose relative to the quality and price of some of the hides, with the

result that defendant would not pay the sum plaintiff demanded, and plaintiff would not receive the amount defendant offered.

Whereupon, plaintiff brought this action to recover $2,539.30 as the price and value of the hides sold.

Defendant answered disputing plaintiff's version of the facts, giving its statement of the transaction, and averring that on this controversy arising, in order to avoid litigation, and with that purpose alone in view, it offered $2,138.40 as the amount due, and that the tender was made on the 30th of October, 1900, to plaintiff personally in the presence of two witnesses, which tender plaintiff refused.

The prayer of the answer is that plaintiff be condemned to accept the amount tendered (the answer renewing the tender) in full satisfaction of the claim based upon the sale of the hides.

Whereupon plaintiff moved for judgment against defendant for the amount admitted in the answer to be due, with reservation of his right to prosecute his suit for the balance remaining.

This motion prevailed and judgment was entered up in plaintiff's favor for $2,138.40, with 5 per cent. interest from October 13, 1900, until paid and costs, without prejudice as to the remainder claimed by him, for which the suit was to stand and be prosecuted.

Defendant took an order of suspensive appeal from that judgment, and pending same applied for a writ of prohibition to prevent the trial judge from proceeding further in the suit for the balance claimed by plaintiff.

The application for the prohibition was denied by this court—it being held (1) that under the established jurisprudence plaintiff could take judgment in advance for an amount admitted in the answer to be owing, and could then prosecute his suit for the remainder; (2) that the suspensive appeal taken by defendant bears only on that part of the cause merged in the judgment, and did not operate to prevent the prosecution of the suit for the balance claimed by plaintiff. See State *ex rel.* Fitzpatrick-Cromwell Co., Limited, vs. Ellis, Judge, 106 La. 715.

Defendant's appeal from the judgment taken by plaintiff for the amount admitted to be due is the matter now before us.

It is assigned as special error that the judgment was rendered against the *Andrew* Fitzpatrick-Cromwell Company, Limited, and that on such judgment plaintiff proposes to take out execution against defendant, the Fitzpatrick-Cromwell Company, Limited.

It is true, the rule served on defendant to show cause why plaintiff should not take judgment for the amount admitted to be owing, described defendant corporation as the *Andrew* Fitzpatrick-Cromwell Company, Limited, and the judgment which followed designated defendant in the same way.

The prefix of the word "Andrew" is not thought sufficient to vitiate this judgment. Andrew Fitzpatrick is the president of defendant company and the rule was served on him. His first name "Andrew" prefixed to the legal cognomen of the corporation, does not in the least render uncertain that the judgment was intended to be against the Fitzpatrick-Cromwell Company, Limited.

Besides, defendant's counsel, in their answer in which it was admitted that the amount for which judgment was taken was due, backed or endorsed the answer as follows:—"Anton Frey vs. Andrew Fitzpatrick-Cromwell Co., Limited."

Having, themselves, committed the error and, thus, perhaps, led plaintiff's counsel into making it, their clients cannot be permitted to reap any advantage therefrom.

We entertain no doubt of plaintiff's right to take judgment for the amount admitted to be due him in defendant's answer.

The question arises whether plaintiff is entitled to interest on the amount admitted by defendant's answer to be due, in the way it is written up in the judgment—that is to say, from October 13, 1900 (the day of the purchase of the hides), until paid.

The contention of defendant is that having made a tender to plaintiff of the amount on October 30th, 1900, this tender stopped interest and that it was error for the trial court to allow interest as was done.

It will be alike interesting and instructive to review the law and the authorities in respect to legal tender, to ascertain what is required to be done in order to stop interest on a debt when there is a dispute between creditor and debtor as to the exact sum due.

Where this dispute exists—the creditor claiming a certain sum; the debtor acknowledging to owe another and a smaller sum and making a legal tender of the same—does such tender, if the amount thereof prove to be the sum actually due, have the effect of stopping interest from running, or, in order to stop interest, must the tender be followed by a consignment or deposit of the money to the credit of the creditor?

In an early case, Mudd vs. Stille, 6 La. 19, Judge Martin, as the organ of the court said:—

It has been contended that interest ought not to have been allowed because a tender was made to the attorney of the plaintiff. But this tender was not made to the person, nor in the manner prescribed by law, to constitute a real tender, *and none other has the effect of stopping interest.* (Italics ours.)

This is tantamount to holding that a real tender made to the right person and in the manner the law points out, has the effect of stopping interest.

What constitutes a real tender, to whom must it be made and in what manner?

"When the tender is for money due," says C. P. 407, " it must be made to the creditor himself, or at his actual or chosen domicil, by the debtor, or by his agent, by tendering to such creditor the sum which is due to him, with the interest and such costs as he may have incurred, and exhibiting such sum to him in the presence of such witnesses, in the current money of the United States." See C. C. 2167, 2168, 2169.

The number of witnesses required to the real tender is two. C. P. 409.

The Code of Practice says not a word about "consignment" or deposit following the tender, *when the tender is for money due. Aliter,* where the thing due and tendered is property. C. P. 405. Then it must be followed by consignment if the debtor wishes thereafter to be relieved of the responsibility and risk of the thing. C. P. 414.

The Civil Code (Art. 2167) declares that when the creditor refuses to receive his payment, the debtor may make him a real tender, and on the creditor's refusal to accept it, he *may* (not must) consign the thing or sum tendered. Then it goes on to say that a real tender followed by consignment, exonerates the debtor; that it has the same effect as a payment; and that the thing thus consigned remains at the risk of the creditor.

Here is a declaration of law that to *exonerate* the debtor the tender must be followed by consignment.

But how exonerate the debtor—from what? From further responsibility as to the safe keeping of the thing tendered and consigned. Thereafter it is to be at the risk of the creditor. It refers to property, to things due—not money for a debt due. C. P. 413. The mean-

ing of the article of the Civil Code is not that to exonerate the debtor from interest on the sum of money he owes, there must be a consignment as well as a tender.

If it be *money* due for debt, and a tender is made of the amount that is owing previous to a. suit having been instituted, the plaintiff shall recover the sum tendered and *such interest only as had accrued previous to bringing the action.* This is one declaration of C. P. 415.

As does Article 405, this Article 415 distinguishes real tenders which are made for debts owing for money due, and such tenders made for property or things due. If *property* is due, it must be tendered, and in order to put it at the risk and charge of the creditor *it must be deposited.*

But where money is due, the legal tender, *without the deposit,* stops the interest.

It is the *tender* and not the deposit which stops interest. This is made plain by the decisions.

In De Gore vs. Kellar, 2 La. Ann. 496, the debtor by leave of court, deposited the money in court to abide the result. The court held the deposit not being *a tender* it did not stop interest. It would, however, have had the effect of a tender if the debtor had deposited it in court in such way that the plaintiff could have taken it. But a mere deposit of the sum admitted to be due in court to await the determination of the issue between the plaintiff and defendant, not preceded by a formal tender to plaintiff, did not have the effect of stopping interest.

In Bacon vs. Smith, 2 La. Ann. 441, the court said the mere announcement by the maker of a note of his readiness to pay, made to the holder and the refusal of the latter to receive the amount, *is not a legal tender* and did not stop interest. Citing C. P. 407, 415.

There was no intimation that a tender *and deposit* was necessary to stop interest; only that a tender was necessary to stop it.

In Small vs. Zacharie, 4 R. 146, the court said:—

With regard to the interest, we think it was also properly allowed. Supposing that the admissions on which the judgment is based could not be divided, the plea of tender relied on by appellants is so informal, irregular and insufficient that it cannot be taken as a compliance with the requisites of the law. Citing C. P. 404, 407, 413, 415; and C. C. 2163, 2164 (old numbers).

If the plea of tender made in that case had been formal and

regular, it would have stopped interest. That is a clear deduction from the language quoted, though further along in the case the court throw out the suggestion that "consignment," too, was necessary.

In Alter vs. Shepherd, 27 La. Ann. 207, the court said:—

The object of consignment is to exonerate the debtor from further liability and risk, and the failure to make it *does not defeat the legality of the tender*. The law says a consignment may be made, but does not make it essential in case the creditor refuses.

The words "in case the creditor refuses" mean in case he refuse the tender made. This case is a direct authority on the point that a tender made must have its legal effect, and this, too, though it be not followed by consignment.

In Mechanics & Traders Bank vs. Barnett, 27 La. Ann. 178 (at bottom of page), the court said:—

The defendant swears he made a tender to plaintiff at maturity of the last note for which his own was pledged; but it is not proved that a formal, real tender of the money was made as required by Article 407 C. P. The defendant cannot, therefore, avail himself *of the exoneration from interest and costs stated* in Article 415 C. P. (Italics ours.)

Here, there is not a word about consignment or deposit of money being necessary. It is an authority direct that a formal tender alone exonerates thereafter from interest and costs.

In Zimmermann vs. Langles, 36 La. Ann. 68 (top of page), the court said:—

Neither does the law make it essential that where a tender has been made or waived, the debtor *should* consign the amount tendered, or which, without the waiver, would have been tendered. It leaves it *optional* with the debtor to do so or not at his pleasure. (Italics ours.) Citing C. P. 412; R. C. C. 2167.

This is a direct authority that a tender does not have to be followed by consignment or deposit and it supports Alter vs. Shepherd, 27 La. Ann. 210, where the court held that though consignment may be made, it is not essential that it should be.

It would, thus, seem to be pretty well established that what is called a "real tender" does not have to be followed by deposit to give effect to the tender. That is to say, a tender regularly made, as the law directs, has the effect of stopping interest and costs from the date of the tender if the amount tendered be the exact amount due at the time of tender.

"The failure to make the consignment does not defeat the benefit to be derived from a tender, or from one which has been waived," said the court, further, in Zimmermann vs. Langles, 36 La. Ann. 68—citing Alter vs. Shepherd, 27 La. Ann. 210.

Again, in the same case, said the court (same page):—

"When the consignment has not taken place, the debtor continues to be answerable for the amount tendered."

Yes, for the amount tendered, but not the interest on it.

"It would be no excuse for him," continued the court, "that he has lost or was robbed of the amount, or that the bank with which he did business and in which the amount was on deposit, to his own credit, has become insolvent, or the like."

And further continued the court in the same case:—"When the consignment has been legally made the debtor is exonerated from further liability."

What is meant by "further liability"? The court tells us for it continues:—"The money or property remaining on deposit *at the charge and risk of the creditor.* Should it perish, or be spoiled, or its value diminished without fault of the debtor, the loss would fall on the creditor." (Italics ours.)

So, the only purpose of the deposit or consignment *after tender* is to put the thing or the money at the risk and charge of the creditor. The tender itself, without the deposit, stops interest and costs if it be for the amount due. This is made still clearer by the language of the court in the Zimmermann case which followed:—Thus:—

When the tender has been made or waived, it is immaterial who is the custodian of the money or the property, the bank or the creditor (debtor?); as in the case of money, the bank would not pay interest on it to the creditor, provided in either case such money be forthcoming on the demand of the creditor. *The debtor, in either case, would not be responsible for interest between the time the tender was made or waived and that of the demand for payment.* (Italics ours.)

The meaning of the sentence italicised is, that when a tender of the amount due is made and refused by the creditor, who, afterwards, concludes to accept it, the debtor is not due interest on the amount so tendered from the time of the tender up to the time when the credtior, reconsidering his refusal, gives notice of acceptance. He does this by demand of payment, or notice of acceptance of the amount that had been tendered. And if the debtor *then* declines to pay the amount,

which once he had tendered, interest would run on the same from the time the creditor had, by demand of payment, signified his purpose to accept.

In Thompson vs. Edwards, 23 La. Ann. 183, the court said:—

If the tender of the amount admitted to be due be not made by the debtor in the manner provided in Article 407 of the Code of Practice, and the creditor brings suit, the debtor must be condemned to pay costs.

This is the equivalent of holding that if the tender of the amount had been made in the manner provided by the law as laid down in the Article of the Code of Practice cited it would have had its legal effect, which is exemption from costs and interest from and after the date of tender. A tender does not merely exempt from costs; but from *interest* as well. C. P. 407 says not one word about consignment.

In McStea & Value vs. Warren & Crawford, 26 La. 453, the court held that where an offer to pay what was due was made and refused, a formal tender was, by the refusal, dispensed with, and that where, after this equivalent of tender, a suit was brought for the money, *interest could be collected only from judicial demand.*

Here is a direct authority that a tender of the amount due, made and refused, stopped interest, though no deposit is mentioned to have been made, and interest only began to run again on a demand being made (in that instance by suit) for payment by the creditor, and from the date of such demand.

In Conrad vs. Burbank, 24 La. Ann. 18, the plaintiff took judgment for so much of his demand which defendant admitted, and reserved the right to prosecute his suit for the remainder. The question arose as to whether he was entitled to interest on the amount thus admitted to be due when interest was not specially included in the admission. The court held he was entitled to interest because by law all debts bear interest at five per cent. from the time they become due, unless otherwise stipulated, and then added:—"To be relieved from payment of this interest, it was incumbent on defendant to allege a tender made in accordance with law."

Not a word about *deposit* as well as tender. Tender alone duly made would have stopped interest. No other conclusion is possible from this decision.

In Merice vs. N. O. & Carrollton R. R. Co., decided by the Court of Appeal for the Parish of Orleans in January 1900, the court said:—

It has been held that the announcement by a party of his readiness to pay a note is not a real tender, and that nothing but a real tender can be effective to arrest interest. Citing C. P. 415; 6 La. 18; 2 La. Ann. 442; 27 La. Ann. 179.

The cases thus cited by the Court of Appeal are among those hereinbefore referred to. The question of interest and what was necessary to be done by a debtor to stop its running against him, was at issue in the case before the Court of Appeal.

The law relative to *real tender* embodied in the Code of Practice, is found in Section one, Chapter IV, beginning with Art. 404 and ending with Art. 418.

The latter Article reads as follows:

All the other rules relative to real tender provided by the Civil Code, not re-enacted in this section, *and which are not contrary to the provisions of the other statutes* relating to the same subject, are hereby repealed. (Italics ours.)

This Article, then, makes it clear that the law of tender as laid down in the Code of Practice prevails over that on the same subject matter in the Civil Code, in case of any conflict between the two.

The Code of Practice nowhere declares that deposit or consignment must follow tender, in case of money due for debt, in order that tender should have its legal effect. On the contrary, even in case where property is due, Art. 412 of that Code specifically declares that where a tender is made by the debtor and refused by the creditor, the debtor *has the option* either to retain the property in possession until the creditor demands the same judicially, or to deposit it at the charge and risk of the creditor.

In case he elects to deposit it and does so in the manner the Code of Practice 413 directs, should it perish thereafter, be spoiled or its value diminish, the creditor must bear the loss, if the tender be adjudged valid. C. P. 414.

And in case where money is due, as hereinbefore shown, Code of Practice 407 provides for nothing more than tendering the sum due to the creditor in presence of two witnesses. So that if the Civil Code be construed as also requiring consignment, it is to that extent in conflict with the Code of Practice and the latter prevails.

In the case of Walker vs. Brown, Sheriff, 12 La. Ann. 266, Voorhies, Judge, as the organ of the court, held that a tender of payment by a debtor, in order to exonerate him, must be followed by a consignment or deposit of the money. The question of interest was not raised, and the declaration of the opinion, that in order to exonerate the debtor, tender of payment must be followed by consignment, was made with reference to the currency notes of a certain bank which Walker (plaintiff in injunction) claimed the right to pay or deliver in satisfaction of the demand made upon him for moneys which he (as sheriff) had collected for taxes. The organ of the court did not make it clear what he meant, as to that case, by the words "tender and deposit of the notes were essential to exonerate the plaintiff."

In view of the fact that no matter as to interest was at issue there, the case is not an authority adverse to the contention—that a real tender of the amount due has the effect of stopping interest. But if the case be in point it is in conflict with the authorities hereinbefore cited and must give way before them.

If a legal tender duly and regularly made does not have the effect of stopping interest—always supposing that the sum tendered is the true amount due—wherefore the good of all the law relating to tender that is found in the books?

What use does tender subserve if it has not that effect? If "consignment" is essential, why did not the. law confine itself to rules regulating the consignment? Why burden itself with a whole Section of the Code of Practice—some fifteen articles—relating to real tender, telling what it was, how to be made, and prescribing precise rules regulating it?

When a tender is made of all that is really due, the creditor has it then and there in his power to possess himself of that which acquits his claim, and if he refuses it upon the mistaken plea that a larger sum is due him, he is without right to complain at the loss of interest thereafter.

All debts, it is true, bear interest at five per cent. from the time they mature, and this without stipulation as to interest, but the law, by providing for real tender, supplies a way for the debtor, by putting his creditor in default, to stop the running of interest against him.

The *consignment* without the *tender* would not stop interest. The law does not so provide. The consignment does not benefit the

creditor, for, claiming a larger sum, he will not accept the amount consigned in discharge of the debt, and, thus, not being possessed of the money he has not its use.

If it be said he may change his mind, and the money being on deposit, he can at any time possess himself of it and by its use or investment make it earn interest, it is answered so he may, any time after the tender, experiencing a change of mind as to its refusal, notify the debtor of his willingness to accept, and if not paid by the debtor on such notification, interest commences to run again from that moment.

On reason and authority, therefore, it is held that a real tender made of the true amount due a creditor, puts him in default in respect to it, and suspends from its date the running of interest on the debt in favor of the creditor.

Since defendant's answer alleges that a legal tender of the amount due had been made to plaintiff on October 30th, 1900, which had been then refused, it was error to include in the judgment interest *until paid.*

If it be true that $2,138.38 is all that defendants owe, and that they tendered it on October 30th, they are not answerable for interest thereafter, and in advance of the trial of the merits of the cause the judgment, in awarding interest, should have confined itself to interest from the time plaintiff claimed it, October 13, 1900, to the date of the alleged tender, October 30, 1900.

The same is true of costs. The judgment for the amount admitted to be due should have awarded costs, if any, incurred only up to the date of the alleged tender.

The question of interest and costs accruing *after* the date of the alleged tender should have been left over to await the trial on the merits as to the balance of his demand claimed by plaintiff and disputed by defendant.

If on that trial defendants show that the amount they tendered plaintiff on October 30th, 1900, was the exact sum which was due, and no less, they will owe no interest and no costs thereafter.

But if it appear otherwise, and plaintiff recovers the balance, or part of the balance, he claims, then defendant will owe interest on the $2,138.38 from October 30, 1900, up to the time they pay the same to plaintiff, as well as interest from October 13, 1900, on the balance, or

part thereof, as the case may be, for which he recovers judgment at the trial on the merits, and will also owe the costs of suit incurred after the date of the alleged tender, October 30, 1900.

It is, therefore, ordered that the judgment appealed from be amended as follows:—That plaintiff do have and recover of defendants, the Fitzpatrick-Cromwell Company, Limited, the sum of two thousand, one hundred and thirty-eight and 40-100 dollars, with 5 per cent. *per annum* interest thereon from October 13, 1900, to October 30, 1900, together with costs if any which had been incurred up to said October 30, 1900, without prejudice to the difference between the amount, $2,539.30, claimed by plaintiff, and that admitted by defendant, $2,138.40, and for this difference or balance plaintiff's right to prosecute the present suit is reserved.

It is further ordered that plaintiff's right to claim interest from October 30, 1900, on the sum for which judgment is now awarded him, should defendant fail to make good their plea of legal tender, be likewise reserved to him, and also that his right to claim interest from October 13, 1900, on the balance, or part thereof as the case may be, for which he recovers judgment on the trial of the merits, should defendants fail to make good their plea of legal tender, be reserved to him—the same to be considered and determined by the trial court when trial for the balance claimed by plaintiff is had, or thereafter.

It is further ordered that as thus amended the judgment appealed from be affirmed, costs of the appeal to be borne by plaintiff and appellee.

BREAUX, J., dissents.

Rehearing refused.