•His Honor, 'CHARLES F. CLAIBORNE,
rendered the opinion and decree of the Court, as follows:
This is a suit by executory process to enforce payment of a promissory note. The defendant enjoined on the ground of partial payment.
By act before Felix J. Dreyfous, notary, dated March 17th, 1907, the defendant, Joseph A. Thomas, sold to the Metropolitan Building Company, a building or homestead association, a certain lot of ground described in said act.
By another act on the same day before the same notary the same Metropolitan Building Company, represented by its president, Joseph C. Diboll, made a re-sale of the same lot of ground to the same Joseph A. Thomas for the price of $4,000 in part payment of which he paid cash $200 and for the balance he furnished his note for $3,800 to his own order and by him endorsed payable at one year after date with eight per cent per annum interest from date until paid, paraphed for identification with said act.
The act contains the further stipulation:
“It is understood between the parties hereto that there are to be included in this sale the buildings to be erected on said property by the vendor, per contract entered into between the parties hereto on this day. ’ ’
By a separate contract, called the “loan contract,5’ signed by J. C. Diboll for the Metropolitan Building Company, and by J. A. Thomas, the latter, among other obligations, “does hereby obligate himself * * * to pay said notes together with the interest accruing thereon by means of regular monthy payments of not less than $47.60 each; such payments to be due and payable on the ____day of each month at the office of the second part *178 (the Building Company) commencing on the completion of the improvements to be placed on the ground by tbe party of the second part on the occupancy of the premises by the party of the first part and from the annual sum of these payments shall be first deducted the annual interest on the amount of the loan remaining’ unpaid ¡a.t the commencement of the current year of the notes, and the balance shall be applied directly to the partial payment of the face of the notes less any amounts which may be due the company for penalties or for disbursements for the account of the party of the first part.”
In accordance with the act of sale and the “loan contract ’ ’ Thomas made to the Building 'Company the monthly payments stipulated in the loan contract until May 28th, 1913, for which he received receipts, and at each succeeding yearly maturity of the note, the Building Company made payments of the interest and partial payments of the note and credited same upon the note.
,So that we find the following endorsements upon the note; on March 7th, 1909, “Paid on account principal of this note $800 and all interest paid up to March 7th, 1909” and payments of balance now amounting to $3000 extended to March 7th, 1910.
On March 8th, 1910; “ on account note $331.20. By mutual consent the payment of this note now reduced to $2,668.80 is extended to March 7th, 1911 — all interest paid to March 7th, 1910.”
On March 8th, 1911, “on account note $310.10. By mutual consent the payment of this note now reduced to $2,358.70 is extended to March 7th, 1912; all interest paid to March 7th, 1911.”
On March 12th, 1912; “on account note $382.50. By mutual consent the payment of this note now reduced to *179 $1,972.20 is extended to March 7th, 1913; all interest paid to March 7th, 1912.”
On March 7th, 1913; “on account note $175.10. By-mutual consent payment of this note, now reduced to $1,801.10, is extended to March 7th, 1914; all interest paid to March 7th, 1913.”
All these endorsements are signed by “J. A. Thomas per J. C. Diboll, ’ ’ with the exception of the endorsement dated March 12th, 1912, which is signed by J. A. Thomas himself. The reason this endorsement w-as signed by J. A. Thomas personally is thus explained. By a letter dated March 12th, 1912, addressed to J. A. Thomas by the Metropolitan Building Company he was requested to call at the office of F. J. Dreyfous to re-indorse his note as. “it is necessary to re-indorse these notes every five years — on that day the endorsement was made at the office of F. J. Dreyfous by one of his clerks and signed by J. A. Thomas. There is no evidence that Thomas knew of the ether endorsements until then.
Some time before the maturity of the note in 1913 he was notified by a “pink slip” to call at the office of Mr. Dreyfous to pay the note. He then made a loan with the Orleans Homestead Association to pay it. When Mr. Thomas with the notary of the Homestead Association called for the note, they were informed that the owner and holder of it was absent in Europe and that the note could not be produced until his return. Mr. Thomas testifies that this was the first information that he had that the note was not held by the Metropolitan Building Company. When the holder of the note returned, he claimed a balance due of $1,801.10 with interest while Thomas admitted owing him only $1,430.14, which he tendered on November 22nd, 1913, and met with a refusal. The dif *180 ference between the-two amounts, $370.96, consists of payments which Thomas made to the Metropolitan Building Company, and which this company failed to place to the credit of the note.
There is no dispute that Thomas paid that amount of $370.96, and the only question'is who shall lose it, as the company has gone into the hands of a receiver. Plaintiff has obtained an order for executory process for the whole amount claimed by him, and defendant has enjoined him. The trial Judge rendered judgment in favor of plaintiff, Wolf, and against the defendant. We cannot agree with him. The evidence shows conclusively that Thomas was making partial payments of his note in capital and interest during six years in installments from time to time to the Metropolitan Building Company as his creditor believing it to be the holder and owner of the note signed by him; and that he never knew and never had reason to- believe that it did not hold his note or that any one else was the holder of it; that said note continued to be owned by the company until 1909, when it was reduced to $3,000 and then only changed ownership. The evidence is also conclusive that for six consecutive years the agent of the plaintiff received from the company six successive payments of interest and partial payments from the company and that he knew that the money he was receiving from the company had been paid to it by Thomas on account of said note. That knowledge is conclusively established by the fact that he knew that Thomas was originally the debtor to the company, and that the company, his creditor, was not paying his note with its own money. A disinterested witness testifies that when he called at the office of Mr. Dreyfous to find out the balance due on the note he was told by the clerk in the of *181 fice charged with such matters that “she would have to telephone to the Metropolitan Building Company first before he could pay the note in order to find out the.exact amount due.” At the respective maturities of the note, all notices save the last were sent to the company and not to Thomas, and the beneficiary of the policy of insurance was not changed until June, 1913, after Thomas had disputed the amount' of his indebtedness. This conduct of the plaintiff was a continuing .authorizatiun to the company to receive from the defendant payments on account of said note and ratification of past authority and payments. The company was not acting as the agent of Thomas, because Thomas was not paying the company in order that it might remit to another, but Thomas was paying to one he believed his creditor. By abstaining from notifying Thomas that he was the holder of said note, and by receiving the money collected by the company for his account, Wolf constituted the company his agent, for the purpose of receiving payments on said note.. By standing by and ratifying the payments made by Thomas to the company, he led him to believe that he was paying the proper person and that all future payments similarly made would be good, and that the company was authorized by him to receive them. He cannot be heard now to repudiate the authority of the company because it has failed to account to him for what it has received.
We cannot conceive that the transíerree of a note can stand by and see the drawer of the note make partial payments of the note for a. series of years to a former owner ■and transferror whom he believes to be still the owner, and afterwards repudiate said payments and claim the whole amount of the note from the maker.
The case of Kremp vs. Dorsey, does not conflict with the views herein expressed. In that case there was no al *182 legation or proof that the holder of the note was aware that the maker was making payments to another.
Bnt the defendant does not deny that he owes some part of the note; his claim is that he has paid a part of it for which he has not received credit. The whole writ, cannot be-, enjoined for a partial payment. If it issues for more than is due the injunction can' be maintained only for the .amount of the credit not allowed.
Kremp vs. Dorsey, Ct. of App., No. 6339.
. The plaintiff having refused tender of the amount due ■ to him is not entitled to interest even though the defendant did not follow up his tender by a consignment of the amount admitted to be due.
108 La., 125; 131 La., 163, 437.
Nor is he entitled to attorney’s fees or costs as the writ issued after tender and without necessity.
14 A., 327 51 A., 1621 (1617); 46 A., 469; 110 La., 1013; 121 La., 955; C. P., 155, 549, 416; 4 R., 144; 108 La., 132, 135; 14 A., 90; 131 La., 163, 437.
It is therefore ordered, adjudged and decreed that the judgment of the District Court herein be reversed, avoided and annulled; and it is now ordered that the order for executory process be reinstated to the extent of pn-e thousand four hundred and thirty 14-100 dollars; it is further ordered that plaintiff’s prayer for interest, attorney’s fees, and costs be rejected, provided the defendant shall pay the aforesaid sum .of one thousand four hundred land thirty 14/100 dollars within three days after this judgment shall become final, otherwise his rights thereto to become absolute from said date; it is fur *183 ther ordered that the costs of the appeal be paid by plaintiff and appellee.
Opinion and decree, December 6th, 1916.
Godchaux, J., dissents and files reasons.