No. 2436
Second Circuit

---

CENTRAL HARDWARE COMPANY, INC., v. WILLIAM H. ELLIOTT

(February 8, 1926, Opinion and Decree)
(March 11, 1926, Rehearing Refused)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Interest—Par. 31; Tender—Par. 1, 6.**

No one is required to do a vain thing. The peremptory refusal of a creditor to accept full payment of what is due him when actually tendered dispenses with the formality of actually producing the money in the presence of witnesses, as required by Code of Practice, Art. 407. Thereafter no interest will be allowed on the obligation.

McStea & Value vs. Warren & Crawford, 26 La. Ann. 453.

Alter vs. Shepherd, 27 La. Ann. 210.

Zimmerman vs. Langle, 36 La. Ann. 68.

Frey vs. Fitzpatrick, 108 La. 125, 32 South. 437.

2. **Louisiana Digest—Evidence—Par. 162.**

In cases of verbal contracts, the declarations of the parties or either of them made at the time of entering into the contract are direct proofs of the contract itself and therefore not hearsay evidence; and any complete statement so made heard by a third person is admissible in evidence.

Gordon vs. Stubbs, 36 La. Ann. 625.

Appeal from the Thirteenth Judicial District Court of Louisiana, Parish of Rapides. Hon. Leven L. Hooe, Judge.

This is a suit to recover a balance on an alleged verbal contract of lease.

There was judgment for plaintiff as prayed for and defendant appealed.

Judgment set aside and for plaintiff in smaller amount.

Lamar Polk, of Alexandria, attorney for plaintiff, appellee.

Overton & Hunter, of Alexandria, attorneys for defendant, appellant.

STATEMENT OF THE CASE

REYNOLDS, J. This is a suit by the Central Hardware Company, Inc., against William H. Elliott to recover $1500.00 balance claimed to be owing on a verbal contract of lease that plaintiff alleges was entered into by it with defendant for twenty months, from January 15, 1923, to September 14, 1924, at $100.00 per month, and under which lease defendant had paid $500.00.

Defendant admitted he entered into a lease contract with plaintiff but denied that it was for twenty months or any fixed period and alleged that it was by the month and was to terminate at his pleasure.

He further alleges that he occupied the leased premises for six months, or from January 15 to July 14, and that he paid plaintiff $500.00 for the first five months' rent at the rate of $100.00 a month, and on July 14 mailed him a check for $100.00 as rent money, together with the keys to the building, but that the plaintiff refused to accept the check tendered in full payment.

There were other issues presented under the pleadings and evidence, but under the view which we take of the case, these are the only issues that need be considered.

The case went to trial and there was judgment in favor of plaintiff as prayed for and the defendant appealed.

OPINION.

The question to be decided is whether the lease contract entered into was for

twenty months, as contended by plaintiff, or by the month, as claimed by defendant.

It is admitted by both plaintiff and defendant that a lease contract was entered into.

Mr. J. A. R. Peart and Mr. J. G. Bond, who represented the plaintiff in making the lease, swore positively that the lease was for the full remaining term of plaintiff's own lease, or twenty months.

Defendant, William H. Elliott, swore positively that the lease was from month to month at $100.00 per month, and that he was at liberty to abandon the premises at any time he saw fit to do so, and that he had refused to enter into a contract of lease for any stipulated time.

Peart and Bond both testified, in effect, that defendant's principal purpose in buying defendant's stock of merchandise in the store, which he did, was to obtain the use of the building.

Mr. Peart testified, page 17:

"Q. And Mr. Elliott took it just as it was on your inventory, after the examination to which you have testified?
"A. He accepted it as it was; he was after the building."

Mr. Bond testified, page 26:

"Q. I asked you what was the moving consideration for the sacrifice of the goods at 71c on the dollar? In other words, why did you sell it at so greatly reduced price?
"A. To get rid of the building, and that seemed to be Mr. Elliott's prime purpose in buying the stock of merchandise, was to get the building.
"Q. What did he say as to that?
"A. He said that that was the only reason that he would pay us $100.00 a month and buy the stock of merchandise was to get a lease on the building."

If defendant, a dry goods merchant was as anxious to secure a lease on the building as contended by plaintiff's witnesses, and was so anxious to get a lease on the building that he, a dry goods merchant, was willing to buy a $5000.00 stock of hardware merchandise, we cannot understand why it was necessary for plaintiff to reduce the price of his lease from $123.00 a month to $100.00 a month in order to be able to close the lease contract.

Neither can we understand why an experienced business man like Mr. Peart or Mr. Bond failed to secure rent notes or a written lease if Mr. Elliott was as anxious to secure the lease as they say he was.

Nor can we understand why Mr. Elliott, if he was so anxious to secure the lease, failed to demand a written contract, since without one he was certainly at the mercy of the plaintiff.

The fact that neither plaintiff nor defendant demanded a written contract of lease corroborates, we think, Mr. Elliott's contention that the contract was by the month.

And Mr. Elliott's contention that the lease was from month to month is further corroborated by the testimony of Mr. Strange, page 75.

"Q. I asked you what was it that you heard Mr. Elliott saying to these gentlemen?
"A. I heard Mr. Elliott, while we were in there, * * * speak to this gentleman here and say that he did not want a contract, a lease, but that he would pay $100.00 a month for the time that he used the building; * * *."

Plaintiff objected to this evidence on the ground that it was hearsay, and that the witness had not heard all of the conversation and therefore should not be permitted to testify to what he had heard.

We do not think the objection sound for the reason that the portion of the conver-

sation that the witness heard was a complete statement of what one of the parties to a verbal contract said about it at the time it was entered into.

In cases of verbal contracts, the declarations of the parties to them or of either of them, made at the time of entering into the contract, in respect of the contract, should be viewed as distinct proof of the contract itself.

Gordon vs. Stubbs, 36 La. Ann. 625, supra.

The statement of one of the contracting parties about the contract made at the time the contract is being entered into is not hearsay but forms part of the contract itself.

Ibid.

We think the evidence of Mr. Strange, above quoted, was admissible, and, accepting the same as true, it completely destroys the contention of plaintiff that the lease was one for twenty months.

Mr. Elliott's version of the contract is further corroborated by the testimony of Frank Norfleet, who testified, pages 79 and 80:

"Q. Did Mr. Peart state to you in that conversation whether he had leased that building to Mr. Elliott for twenty-two months—I mean for twenty months, the unexpired term of your lease—or had leased to Mr. Elliott by the month?

"A. I understood him to say that he had leased it by the month, as well as I can remember.

*    *    *    *

"Q. Did Mr. Peart say anything to you with reference to changing it into a garage?

"A. No, sir, but he asked me to get a renter after Mr. Elliott moved out."

Mr. Elliott is further corroborated by Mr. Noel A. Privatte, who testified, pages 104 and 108:

"Q. Did you hear Mr. Elliott ask Mr. Peart anything about what sort of a contract of lease he and Mr. Peart had entered into?

"A. I heard Mr. Elliott ask Mr. Peart if he ever agreed to take a lease on the building except from month to month, and Mr. Peart said no, you never have taken a lease.

"Q. Mr. Privette, did I understand you to say that you did hear Mr. Peart admit that Mr. Elliott had never agreed to take the building except from month to month?

"A. Yes, sir, I understood that distinctly."

Mr. Elliott is further corroborated, we think, by the fact that on July 7, 1923, he wrote to plaintiff enclosing a check for $100.00 in full payment of all rent due by him and also enclosed the keys to the building and notified plaintiff that he would not use the building any more, and that a short time thereafter he defied Mr. Peart to interfere in any way with his moving his goods out of the store. We think that if plaintiff had been satisfied at that time that it had a claim against defendant for fourteen months additional rent at $100.00 a month it would not have allowed defendant to move his goods out of the building and thereby free the goods from its claim of a lessor's privilege thereon but would rather have sequestered the goods for the balance alleged to be due for rent; and especially would plaintiff not have waited from July 14 to December 17 before filing this suit.

We always give weight to the findings of the lower court on questions of fact, especially when the reasons for judgment are given in writing; but when we are convinced, as we are from the evidence in this case, that the judgment appealed from is erroneous, it becomes our duty to reverse it.

Defendant asks judgment against plaintiff in reconvention for $309.78 for goods alleged to have been broken or missing and

not delivered according to agreement, and also for $114.00 interest paid and that should be refunded.

The weight of the evidence does not, we think, warrant us in allowing these demands.

Defendant owed plaintiff $100.00 for the last month's rent of the store and mailed it a check for that amount, and plaintiff wrote defendant that it would not accept the amount in full settlement. Plaintiff's refusal of the check relieved defendant from the necessity of making any further tender and also terminated the period during which interest could be allowed plaintiff.

Frey vs. Fitzpatrick, 108 La. 125, 32 South. 437.

For these reasons, it is ordered, adjudged and decreed that the judgment of the lower court be avoided and set aside and that plaintiff have judgment against defendant for the sum of one hundred dollars. Plaintiff to pay the costs of both courts.