(117 So. 817)

No. 28728.

**PARSONS v. UNITED STATES FIDELITY & GUARANTY CO. et al.**

May 7, 1928. Rehearing Denied July 2, 1928.

·750

Spearing & Mabry, of New Orleans, for appellant.

Woodville & Woodville, of New Orleans, for appellee.

LAND, J. Plaintiff is the holder of three promissory notes, dated March 29, 1924, and aggregating the sum of $27,500. Two of the notes are for the sum of $10,000 each, and one is for the sum of $7,500.

All of these notes were made by Mandeville John Sangassan to his own order, and by him indorsed, and were payable 6 months after date, with 8 per cent. per annum interest from date until paid.

These notes were secured by special mortgage on lots L, K, and M, in square No. 381 (bounded by Carrollton avenue, Belfast and Short streets, and by Fontainebleau drive), and were executed by Sangassan for an indebtedness of $27,500 due to R. Marks, mortgagee.

On April 3, 1924, the defendant the United States Fidelity & Guaranty Company executed in favor of plaintiff, the holder of the mortgage notes, a certain completion and lien

bond of indemnity with Sangassan, the owner, as principal in the bond.

As none of these notes was paid by the maker at maturity, the mortgage was foreclosed and the property sold by the civil sheriff of the parish of Orleans for a total price of $50,000, in the matter entitled E. A. Parsons v. Mandeville John Sangassan, No. 160324 of Division D of the civil district court for the parish of Orleans.

Certain mortgages, liens, and privileges were recorded in the mortgage office for the parish of Orleans against the property at the time of the foreclosure sale.

On rule of the civil sheriff, the amount and rank of the various incumbrances were established, and judgment was rendered in the civil district court ordering that, after the payment *of costs and charges of suit, and of sale, and of taxes*, all liens for labor and material furnished in the construction of the apartment house on the property sold under foreclosure, *including a paving lien* in favor of the city of New Orleans, be paid by preference and priority over the special mortgage of plaintiff, and that the balance be applied to the payment of plaintiff's mortgage of $27,-500.

Plaintiff alleges a balance due him of $7,-606.62, after compliance by the civil sheriff with the judgment of the lower court as to these payments, and seeks to recover judgment in solido for this amount against Sangassan, as principal, and defendant company, as surety, on the completion and lien bond executed by defendants in favor of plaintiff on April 3, 1924.

Plaintiff claims also that the price of $13,-860.53 for the completion by him of the apartment house on the property mortgaged was reasonable, and was properly allowed in the judgment of the civil district court, ranking the various incumbrances on the property.

Judgment was rendered in the lower court in favor of plaintiff, and defendant surety company has appealed.

The United States Fidelity & Guaranty Company makes several defenses to the present suit:

█ 1. It is urged that, prior to foreclosure proceedings, offers were presented to plaintiff by defendant surety company to purchase these properties, aggregating more than sufficient to satisfy all liens, and that plaintiff refused to accept these offers.

Even if this be the case, defendant cannot claim any release from liability, as surety, in the present suit.

As said in Frey v. Fitzpatrick-Cromwell Co., 108 La. 132, 133, 32 So. 439:

"In Thompson v. Edwards, 23 La. Ann. 183, the court said: 'If the tender of the amount admitted to be due be not made by the debtor in the manner provided in article 407 of the Code of Practice, and the creditor brings suit, the debtor must be condemned to pay costs.'

"This is the equivalent of holding that, if the tender of the amount had been made in the manner provided by the law as laid down in the article of the Code of Practice cited, it would have had its legal effect, which is exemption from costs and interest from and after the date of tender."

Plaintiff procured the loan of $27,500 for Sangassan in order to enable him to complete the apartment house in course of erection on the mortgaged property, and exacted the completion and lien bond sued upon in this case.

After the default of Sangassan, the owner, and of defendant company, the surety, to complete the building, plaintiff, as holder of the mortgage notes, completed same at a cost of $13,860.53.

█ 2. It is urged by the surety company, as a defense, that the cost of completion was excessive.

There were no regular plans or specifications or detail drawings prepared for the building. A general outline of the building is found in a letter of date March 15, 1924, written by Sangassan to plaintiff. The building was to be an eight-apartment house, frame structure, with stucco exterior on metal lath. Each apartment was to contain a living room,

dining room, kitchenette, hall, bath, and bedroom. The roof was to be of genuine Spanish tile with all galvanized flashings. The interior woodwork was to be in Bohemian ivory, and walls in tint of proper hue, and finish to match. Electrical fixtures of the candelabra type were to be installed in living room and dining room. The bath was to have a built-in tub; and laundry trays and servant closets were to be installed in basement.

After receiving one bid for $24,813 and another for $12,500, plaintiff concluded to act as his own contractor, to secure individual bids, and to have a foreman supervise the work at an agreed price of 10 per cent. of the cost of labor and material. The building was completed by plaintiff at a cost of $13,680, which appears to us to be reasonable enough, and to compare favorably with the lowest bid he received, to which was attached the condition that, if any concealed electrical or plumbing work should need attention, such work would be done at an extra cost. As a matter of fact, this condition did actually exist, as was ascertained later on.

This court is not in a position to act upon and determine cost of building, in the absence of plans, specifications, and detail drawings, and when no cost limit is fixed as to the building, the materials, fixtures, or anything else. It is idle, therefore, for defendant surety company to complain, under the circumstances, of the cost of a scroll iron door, servants' toilets, and two laundry trays, or of such necessary incidentals as stonework or outside paving.

■ 3. It is also urged by defendant surety company in its brief:

"That the conditions of its bond were to save Parsons harmless from only the failure of Sangassan to complete the building *and only from liens for materials and labor furnished in the execution of the contract.* It was not conditioned *to hold him harmless from the costs of foreclosure proceedings* under his mortgage, *from paving liens* of the city of New Orleans, *from taxes nor from insurance.*"

The completion and lien bond furnished by Mandeville John Sangassan, as principal, and defendant surety company is for the sum of $15,000, and is made payable to E. A. Parsons (plaintiff) as obligee, "or to any holder of mortgage notes hereinafter described." This bond covers only the particular mortgage for $27,500, held by plaintiff, and is restricted entirely to the three lots owned by Sangassan and affected by this mortgage, and upon which the eight-apartment house was being erected by Sangassan, as owner.

It is expressly stated in this bond:

"And whereas the said principal has undertaken to construct an apartment house on the above-described property. Whereas, the said principal has borrowed the sum of twenty-seven thousand five hundred ($27,500) dollars from the said obligee and, in order to secure the payment of same, has executed a special mortgage on the real estate covered by this instrument, by act before E. A. Parsons, notary public, dated March 29, 1924, and recorded in the Mortgage Office Book 1298, folio 512, and whereas the obligee requires bond to secure him against any and all loss, cost, or expense by reason of noncompletion of building described, or resulting from the filing of any lien or privileges or recording same against said property and shall defend, hold, *and keep harmless the said property unincumbered from any and all claims, liens, or privileges, recorded or unrecorded, for labor, material, or services or anything of value furnished in or for the erection of said building,* and shall further defend any action brought to enforce *any such claim, lien, or privilege against said property* and shall pay and satisfy any judgment that may be rendered in any such action or proceedings, and further shall cancel or erase, either through judicial proceedings or by payment, satisfaction, or settlement, *any claim, lien, or privilege growing out of the erection and completion of said building,* then and in that event this obligation shall be null and void and of no effect; otherwise the same shall remain in full force, virtue, and effect." (Italics ours.)

In the foreclosure proceedings of plaintiff's mortgage for $27,500, the property was adjudicated for the sum of $50,000.

The position of defendant surety company is that there is no condition in its bond to hold plaintiff harmless from the costs of foreclo-

sure of his mortgage, nor from taxes, paving liens, and insurance, that, for this reason, such items were improperly deducted from the price for which the property was adjudicated, and that, without such deductions, the property brought nearly $5,000 more than sufficient to pay plaintiff's mortgage, with interest, liens for materials furnished Sangassan, the owner, and cost of completion of the building by plaintiff. In other words, defendant surety company proposes to ignore all existing liens and lawful charges on the property, except the material liens against Sangassan, the owner, the cost of completion of the building by plaintiff, and the amount of plaintiff's special mortgage with interest, and to deduct from the price of adjudication these particular items and no others, as if such price were a net balance left after the payment of all other liens and charges.

It must be assumed that defendant surety company was aware of the existence of other incumbrances on the property, at the date of the execution of the lien bond in this case, and was advised also of the fact that these items had to be paid out of the price of adjudication.

While not properly chargeable against defendant surety company, these various items are made payable by law out of the price of adjudication, and may be reckoned as sums which plaintiff was compelled to lose, because not covered by the lien bond in this case.

Plaintiff makes no complaint as to these items, but because of the payment out of the price of adjudication of the material liens against Sangassan, the owner, and of the cost of completion of the building, plaintiff does complain, and justly so, that he has suffered a loss of $7,606.62, with 10 per cent. attorney's fees, on his mortgage debt. The lien and completion bond of defendant surety company protects plaintiff's mortgage, clearly and specifically, against any claim, lien, or privilege growing out of or connected with "the erection and completion of said building,"

and, under the facts of the case, plaintiff is entitled to recover on the bond.

4. The defense that, by act before A. J. Cuneo, notary public, plaintiff purchased on December 3, 1924, and in the name of Joseph Schwartz, all of the properties of Sangassan, and that thereby all of plaintiff's mortgages on these properties became canceled by confusion, is without merit, as it is not supported by the facts of the case.

5. The defense that liens amounting to $3,948.83 were bought in by plaintiff at a discount of $780.96, and that defendant surety company should be given credit for this amount, is meritorious in our opinion, for the reason that plaintiff did not lose, as against his mortgage, the full amount of these liens, but only the sum for which the liens had been discounted by him, and is therefore without just claim to demand of the bonding company a greater indemnity. Defendant surety company is entitled, therefore, to the credit claimed.

It is ordered that the judgment appealed from be amended so as to credit defendant surety company with the sum of $780.96, the discount on the liens bought in by plaintiff.

It is now ordered that the judgment, as amended, be affirmed, that defendant surety company pay the costs of the lower court, and that plaintiff, appellee, pay the costs of appeal.